In re The CELOTEX CORPORATION, Debtor.

**Speights & Runyan, Appellant,**

v.

**C. David Butler, United States Trustee, and Asbestos Settlement Trust, Appellees.**

No. 98–1522–Civ–T–26F.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 3, 1998.

See also 232 B.R. 484, 232 B.R. 493.

Daniel A. Speights, Speights & Runyan, Hampton, SC, for Speights & Runyan.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Celotex Corp.

Cynthia P. Burnette, U.S. Trustee's Office, Tampa, FL, for U.S. Trustee.

Kevin E. Irwin, Keating, Muething & Klekamp, Cincinnati, OH, for Kevin E. Irwin.

## ORDER

LAZZARA, District Judge.

The law firm of Speights & Runyan (the Law Firm) appeals the Bankruptcy Court's order denying its application for attorneys' fees brought pursuant to the provisions of 11 U.S.C. § 503(b)(3)(D) & (4), which allow such fees to be awarded to a creditor's attorney as administrative expenses of the bankrupt estate so long as the attorney makes a "substantial contribution" in the case. It contends that the Bankruptcy Court erred as a matter of law in determining that these statutory provisions did not apply to a creditor's attorney and that, based on the record, it made a substantial contribution to the estate in the bankruptcy case involving the Celotex Corporation. The United States Trustee and the Asbestos Settlement Trust[1] (the Appellees) argue that the Bankruptcy Court's determination to disallow fees to the Law Firm did not constitute an abuse of discretion.[2] After a thorough review of the record and the controlling law, this Court concludes that the Bankruptcy Court did not abuse its discretion in denying fees to the Law Firm and thus affirms that decision.[3]

The Law Firm was involved in the proceedings before the Bankruptcy Court from the very inception of the case. Its involvement consisted of representing and protecting the interests of asbestos property damage claimants. It is undisputed that while acting in that capacity the Law Firm played a significant role in successfully negotiating a reorganization plan which was acceptable to the many competing interests involved in the case and in having that plan adopted by the Bankruptcy Court and approved by the United States District Court. Despite the fact that the Law Firm will ultimately receive fees from its clients once their claims are allowed, it brought an application for fees under the provisions of 503(b)(3)(D) & (4) claiming that because it had substantially contributed to the reorganization plan it was entitled to fees as administrative expenses of the bankrupt estate in the sum of either $557,789.90 (based on hourly rates when services were rendered) or $595,395.05 (based on current hourly rates). As it has done before this Court, the Law Firm relied principally on the case of *In re DP Partners Ltd. Partnership*, 106 F.3d 667 (5th Cir.1997) in support of its application to the Bankruptcy Court for fees. The Bankruptcy Court was unwilling, however, to follow a position taken by the Fifth Circuit in that case and denied the application based on other case law. The Law Firm now brings this appeal.

The Law Firm, as noted, partially based its application for fees on section 503(b)(3)(D) which provides in relevant part that "there shall be allowed administrative expenses, ..., including—the actual, necessary expenses, ..., incurred by—a creditor, ... in making a *substantial contribution* in a case under chapter 9 or 11 of this title." (Emphasis added.) The other provision relied on by the Law Firm, section 503(b)(4), classifies attorney's fees as falling within the ambit of allowable

---

1. Under the confirmed Joint Plan of Reorganization, the Trust is charged with the responsibility of compensating individuals who have suffered asbestos-related personal injuries as a result of exposure to Celotex's products. Its assets are also to be used to pay claims for fees such as the Law Firm's if such claims are ultimately allowed.

2. The debtor, the Celotex Corporation, did not file a brief in this case. The Court notes, however, that the debtor fully supported the Law Firm's application for fees before the Bankruptcy Court.

3. The Court dispenses with oral argument pursuant to Federal Rule of Bankruptcy Procedure 8012(3).

administrative expenses under section 503(b)(3)(D).

■■■ Because the Congress did not define the critical term "substantial contribution," it has fallen to the courts to develop the legal framework for assessing whether such a contribution has been made in a case. The underlying premise upon which that legal framework stands is that "[c]ompensation based on substantial contribution is designed to promote meaningful participation in the reorganization process, but at the same time, discourage mushrooming administrative expenses." *In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr.S.D.N.Y.1997) (citations omitted). Thus, "the substantial contribution provisions must be narrowly construed, and do not change the basic rule that the attorney must look to his own client for payment." *Id.* (citations omitted).

■■■ As developed by the courts, the test for determining whether an applicant has substantially contributed to a case as contemplated by section 503(b)(3)(D) is "whether the efforts of the applicant resulted in actual and demonstrable benefit to the debtor's estate and creditors." *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988). Furthermore, because "services engaged by creditors, creditor companies and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party [they] are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization." *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 943 (3d Cir.1994). In order for such services to qualify as substantial contributions to a case, they must be of the type that foster and enhance the progress of reorganization. *Id.* at 944. As will be explained below, however, there is a split of authority as to whether a bankruptcy court may consider a creditor's motivation as a factor in determining the issue of whether a creditor has substantially contributed to the case to the extent that administrative expenses are allowable under section 503(b)(3)(D). Finally, the applicant bears the burden of proving to the Bankruptcy Court, by a preponderance of the evidence, that it made such a contribution. *See In re Granite Partners, L.P.*, 213 B.R. at 447 (citing *In re Lister*, 846 F.2d at 57).

The standard of review which this Court must now utilize in evaluating the correctness of the Bankruptcy Court's fee order is well established. That standard provides that such an order "will be reversed only if the court abused its discretion." *In re Red Carpet Corp. Of Panama City Beach*, 902 F.2d 883, 890 (11th Cir.1990).[4] Such an abuse of discretion occurs "if the judge fails to apply the proper legal standard or to follow proper procedure in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.*[5] As recently articulated by the Eleventh Circuit, "[f]or a factual finding to be 'clearly erroneous,' the Court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir.1998). Furthermore, "[w]here the evidence has two possible interpretations, the . . . court's choice between them cannot be clearly erroneous." *Id.* Thus, the "clearly erroneous" standard has been characterized by the Eleventh Circuit as "a very high standard, one we would rarely be likely to find, especially in a fees situation." *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1401 (11th Cir.1997) (emphasis added).

The Law Firm's first contention is that the Bankruptcy Court committed legal er-

---

**4.** *See also In re Lister*, 846 F.2d 55, 56–57 (10th Cir.1988) (a court's decision to deny application for administrative expenses under 11 U.S.C. § 503(b)(3)(D) is reviewed using an abuse of discretion standard).

**5.** The Law Firm does not raise any issue regarding the propriety of the procedure the Bankruptcy Court utilized in making its determination as to the application for fees.

ror in rejecting the Fifth Circuit's decision in *In re DP Partners Ltd. Partnership* and in determining as a matter of law that a creditor's attorney can never receive fees under the statute. After carefully reviewing the Bankruptcy Court's oral and written pronouncements, the Court rejects this contention. The Court finds absolutely no indication in the Bankruptcy Court's oral or written rulings that it ever concluded as a matter of law that a creditor's attorney is not entitled to fees under the statute. In the Court's view, all the Bankruptcy Court did was simply decline to follow that part of the Fifth Circuit's decision in which the court held that "a creditor's motive in taking actions that benefit the estate has little relevance in the determination whether the creditor has incurred actual and necessary expenses in making a substantial contribution to a case." 106 F.3d at 673. It preferred, instead, to align itself with the body of case law that takes into consideration the creditor's motives when determining the issue of substantial contribution. *See, e.g., In re Lister,* 846 F.2d at 57 ("Efforts undertaken by a creditor solely to further his own self-interest, however, will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate."); *Lebron* 27 F.3d at 944 (" 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.").

■ In rejecting the Fifth Circuit's approach to this issue in favor of the approach taken by courts in other circuits, the Bankruptcy Court acted in accord with the well-settled principle of law that the decision of a circuit court of appeals is not binding on a court of another circuit but is merely persuasive. *See, e.g., Generali v. D'Amico,* 766 F.2d 485, 489 (11th Cir. 1985).[6] Accordingly, because the Bankruptcy Court clearly was not bound by the decision of the Fifth Circuit, it was free to reject the application of that court's legal standard regarding the relevancy of creditor motivation and to apply the legal standard promulgated by other courts which take into account a creditor's self-interest when determining whether a creditor has substantially contributed to a case to the extent that an award of attorney's fees as an administrative expense is legally appropriate. This Court concludes, therefore, that the Bankruptcy Court did not abuse its discretion by failing to apply a proper legal standard.

■ The Law Firm's second argument is that the Bankruptcy Court erred in determining in the face of undisputed facts that it did not make a substantial contribution in the case. The underpinning for this argument is that the debtor, the United States Trustee, and other knowledgeable and disinterested parties, attested to the Law Firm's substantial efforts in achieving a consensual reorganization plan. The Court also rejects this argument. The flaw in the Law Firm's position is that it ignores a bankruptcy court's independent and inherent obligation to review applications for fees even when none of the parties oppose the fee request. *See In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 841 (3d Cir.1994) (bankruptcy court has duty to review fee applications, notwithstanding absence of objections by United States trustee, creditors, or any other interested party, which duty derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest). In line with this duty, a "bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit

---

**6.** The Court notes that another Bankruptcy Court in this district has also rejected the rationale of *In re DP Partners Ltd. Partnership* in favor of the reasoning of *In re Lister. See In re CP III Ltd. Partnership,* 224 B.R. 206, 208 (Bankr.M.D.Fla.1998).

of unsecured creditors." *Id.* at 844. Thus, to protect the estate and to serve the public interest, the Bankruptcy Court was charged with the duty of independently evaluating the Law Firm's fee application, especially the facts it contended established that it had substantially contributed to the case, even though the Law Firm's fee request enjoyed the strong support of the debtor, the Trustee, and other parties. *See In re The Columbia Gas System, Inc.,* 224 B.R. 540, 553 (Bankr.D.Del.1998) (court has independent obligation to review application filed pursuant to section 503(b) to determine its merits, notwithstanding the absence of objections) (citing *In re Busy Beaver,* 19 F.3d at 843–844).

Turning to the record before this Court, the critical issue thus becomes whether the Bankruptcy Court clearly erred when it made the ultimate finding that the Law Firm's representation of numerous property damage clients and the adversarial role it undertook on their behalf in the case against the debtor did not "create[ ] . . . [a] . . . substantial contribution because the end result of their services are just as much towards their particular clients . . . as it is to the estate." After critically examining this finding in light of the record, and after giving this finding the "great" deference it deserves in light of the Bankruptcy Court's unique perspective acquired over the many years it presided over this complex case,[7] this Court is simply not left with a definite and firm conviction that the Bankruptcy Court made a mistake in making such a finding. In this Court's view, the Bankruptcy Court's finding was entirely consistent with one possible interpretation of the evidence, that is, that the Law Firm failed to meet its burden of satisfying the Bankruptcy Court that its "efforts . . . tran-

scended self-protection" and thus failed to overcome the presumption that it was acting in its clients' own self-interests. *Lebron,* 27 F.3d at 944. Furthermore, the Bankruptcy Court's ultimate finding was also factually consistent with its mission of preserving the assets of the estate from being consumed by mushrooming administrative expenses.[8] This Court concludes, therefore, that this is not one of those *rare* fee situations in which the Bankruptcy Court abused its discretion by basing its decision on findings of fact that were clearly erroneous.

**ACCORDINGLY,** for the reasons expressed, the Bankruptcy Court's order is affirmed, and the Clerk is directed to close this case.

**DONE AND ORDERED.**

**7.** *See In re Prince,* 40 F.3d 356, 359 (11th Cir.1994)

**8.** As pointed out by the Trust in its brief, at the time the Bankruptcy Court was considering the Law Firm's application, the total amount of administrative expenses paid out of the estate was close to $80,000,000. Furthermore, the same day that the Bankruptcy Court was considering the Law Firm's request for fees, it was also considering fee requests from other law firms approximating $3,000,000.